Kurywczak, thank you, Kurywczak, thank you, Mr. Slobig. Thank you, Your Honor. May it please the court, good morning. I am Robert Slobig. I represent the plaintiff appellant, Francine Kokenis. The judgment of the district court should be reversed because of procedural error here in the dismissal of the complaint. There is no dispute that the factual allegations undeniably plead all the elements of the cause of action for professional negligence. And what happened here is that the district court erroneously accepted the defendant's invitation to rely on extraneous matters submitted with the motion to dismiss to contradict the allegations of complaint. What objection precisely are you making to the district court's decision to look at Judge Malone's transcript statements that he made in the state court probate proceedings? My objection there is she had the right to take judicial notice of that because the complaint does reference that there was an award of sanctions, although we did not attach it. I think that was fair game. So that was fair game. And what I have the impression that there's a little bit of a ship's passing in the night quality to these arguments because you keep pressing that if her lawyers hadn't filed the motion in April, I forget the exact date, but anyway, they hadn't filed that motion and supported it with the forgery materials, then none of the rest of this would have happened. But what the state judge is concerned about is one step earlier. The state judge is concerned about the fact that she went and got this statement from this person saying that it looked like it was a perjured, you know, an inauthentic signature. And the state judge is very clear that he thinks he makes a credibility determination. He thinks she knew all along it was her signature. So the action of commissioning and getting the handwriting experts report is the predicate to all of this. The attorneys never would have filed it if she hadn't procured it. So, you know, like where do we begin this story is what I'm thinking about. Because if she hadn't tried to defeat this Delta Energy Settlement Agreement the way she was doing it, none of this would have happened either. No one contends that trying to defeat the Delta Energy Settlement was sanctionable. I don't think... But commissioning and getting a... you know it's your signature and if you go out and you find some handwriting experts say, no, it's actually a forged signature, you don't have a problem with that? Well, here's where it went wrong is the complaint specifically alleges that she gave that handwriting experts report to her lawyers saying, I question these conclusions. I do not want you to use this in the case. But that's ridiculous. I mean, you know, it's her signature. She knows if she signed that piece of paper or not. And she's the one who commissioned the report to begin with. Well, Your Honor, actually what the record shows... Trying to shed doubt on something that she knew perfectly well was legitimate. I don't know that she knew perfectly well that it was legitimate. And I think that is one of the fact questions that should not have been addressed in the context of a motion to dismiss under Rule 12b-6. And as far as knowing that was legitimate, I think that's another fact question because her contention... Did she stipulate to the sanction? She did not stipulate to the sanction. She contended before that one of the signatures on the Delta Energy Settlement Agreement, which was a multi-component document with several signatures, was procured in a manner that deceived her. And the state judge rejected that position on the ground that it wasn't credible. I don't know that the record actually contains a credibility finding to that precise effect. And I don't think, even if it did, that that would be dispositive of issues in this case. What he says is the court finds her deposition testimony that someone substituted a signature page with her signature is highly implausible and provided a basis for additional sanctions. So I read that as a credibility determination. Maybe that's not fair. I don't know. It's an interesting use of the word, too, in the context of what is a procedural issue in the federal jurisdiction about what's plausible. They pleaded a plausible cause of action under Iqbal and Twombly that but for the negligent conduct of the lawyers in making an allegation she did not want made in the case that this was a fraud and a forgery, that was an allegation that she never authorized, never wanted to make. But for that conduct of the lawyers in making that allegation, none of the other things that that put into motion would ever have occurred. That's not a plausible allegation in light of the basis of the state court judge's sanctions order, which is properly in the record pursuant to judicial notice. The record also shows that Rule 137 in Illinois, the basis of the sanctions. I'm reading the findings that the state court judge issued, and that judge found repeatedly that your client lied, and that's why the sanctions were imposed. Your Honor, I think that overstates the record. She lied on numerous occasions. The transcript says what it says. You can't collaterally attack the judge's reasoning for the sanctions in this federal action. This is not a collateral attack. The gist of this complaint is that but for the negligence of the lawyers in countermanding their clients' wishes and instructions, the sanctions motions would never have been filed. The deposition that Francine gave would never have been taken, and those findings of the judge would never have been made because the judge never would have had occasion to address all those issues. The lawyers were the origin of the problem. They set the machinery in motion. You go over and over again in this line of argument in your briefs, but the procedural issue that you're pushing, the Twombly-Iqbal issue, is incomplete because as Chief Judge Sykes just said, in evaluating the question whether a complaint states a claim, sure, you have to have a plausible argument, but you need to take into account these other documents that are properly associated with the complaint, such as the state court proceedings whose authenticity nobody is questioning. No one's saying that this was just a fiction, that Judge Malone never heard anything. These are proper subjects to include, and so what Judge Lefkoe does is she looks at the full set of documents she's supposed to evaluate at the 12B6 level, and she says, you just haven't stated a claim. That's right, and then that was error because what she did was look at a selective, cherry-picked arrangement of documents from the state court. Under the APACA decision that we cited of this court, district court can take judicial notice of the fact that the probate court granted sanctions, but not for the truth of the matters asserted in the other litigation, but rather just to establish the fact of such litigation, and here what the complaint alleges is that the motion for sanctions was occasioned by the negligent misconduct of the attorneys. Based on that argument, though, how would a collateral stop issue preclusion ever be in place? Because if we pull that argument out, the judge can never look at the underlying. If the contention is by her going and reading into the transcripts, reading into the depositions or the holdings, if that was too far for purposes of judicial notice, if that's the holding, then collateral stop will ever be able to be made? No one raised collateral estoppel here, and yes, a collateral estoppel can be raised, and it's raised appropriately in the context of a motion under Rule 56. District court erred here in not converting the 12B6 motion to one under Rule 56. But you've never told us what could possibly undermine what the judge said about the flaws in her commissioning this handwriting report to begin with, about her continuing course of conduct in the probate proceeding long after this affidavit was filed, long after anything else. She continued to behave in this way, and the state judge makes it clear that's why he's sanctioning her. It's the full course of conduct. The commissioning of the report is not sanctionable conduct under Illinois Supreme Court Rule 137. It does not involve the filing of a- It's not a Run 137 or the equivalent of Rule 11 in the federal system. It doesn't mean it's not sanctionable. Courts have inherent power to sanction it. Courts do have inherent power to sanction it. But, and I recognize my time is running low, but had the lawyers not countermanded their clients' wishes, that expert's report would never have come to light. In Illinois, you don't disclose a consulting expert's report that you don't intend to rely upon. And that is what should have happened here. It was the lawyers' negligence that set all this in motion. We therefore ask for the reversal of the judgment. Thank you. Thank you. Mr. Nelligan. Thank you, Your Honor. May it please the court, counsel. My name is Brendan Nelligan. I am the attorney on behalf of Defendants Appelese, Demetrio Koreczuk, B. George Oleksiak, and B. George Oleksiak and Associates. Your Honor, obviously our position is that the District Court was correct when it dismissed Count 1 of the plaintiff's complaint against the defendants. That count sought to impose legal malpractice liability predicated upon the sanctions order that was entered against the plaintiff's, again, for her own misconduct, as was demonstrated by Judge Malone's ruling. Nor did the District Court abuse its discretion when it denied the plaintiff's motion to reconsider. If we look at the Opeca case that was raised, the state proceedings can only be referenced as records rather than for the substance. Right. Your Honor, the instance here was Judge Malone's sanctions order, essentially explicating the very order that they were seeking to outsource the liability on to my clients. It is squarely as a judicial notice. The court can't obviously take judicial notice of what the circuit court in this instance ruled upon and what the basis for those sanctions motions were. That was the argument that we made to the District Court was by looking at the crux of their claim, which is Judge Malone's sanctions order, that order by itself demonstrates that it was the plaintiff's own misconduct, beginning from the procurement of the bogus handwriting report all the way through November of 2020, when she ultimately stipulated the enforceability of the Delta Energy Settlement Agreement. Your Honor, Judge Parra, you asked whether the plaintiff stipulated to the entry of the sanctions order. In fact, on November 12, 2020, the plaintiff did, by agreed order, concede the sanctions issue. That is in the record at Document 11-12, which we also attached as an exhibit to the motion to dismiss. Judge Wood, you raised the point about the procurement of this bogus handwriting expert's report, and I think it's an interesting concept if the plaintiff were, rather than procuring a report, if the plaintiff simply prepared a forged document and then provided that forged document to her attorneys, which ultimately wound up into the court record and then ultimately resulted in the order of sanctions, I don't think plaintiff would be able to come in here and say, well, I didn't do anything wrong. I just gave this forged document to my attorneys, and I told them, don't rely on this forged document. That raises the issue that we point out, that the plaintiff is seeking to avoid the consequences of her own misconduct, her own fraudulent and sanctionable misconduct. That, as we point out, is it's prohibited by both Illinois law and federal law, the notion that where the plaintiff is seeking to recover from circumstances directly arising from her own misconduct, the courts aren't going to entertain that. Does it make sense to spend a little time talking through the timeline of her conduct? I beg your pardon? I believe there was an objection made in January of 2019 regarding the trustee's accounting. Correct. And it was that objection that my clients made on the plaintiff's behalf in the probate action. That thereafter, in January 29, that objection is made. The Crispin report, that's the bogus handwriting expert's report, that is dated February 12th of 2019. And the plaintiff admits that she obtained, procured that report, and sent it to my clients. Subsequent to that, the trustee filed a motion to dismiss the objection in March of 2019. Because of the April settlement agreement? Correct. Because of the Delta Energy settlement agreement. Thereafter, in April of 2019, my clients filed a response to that motion to dismiss, wherein the Crispin report was attached. Subsequent to that is when the sanctions motion blossomed, so to speak. And then ultimately, my clients, they withdrew from the case in August of 2019, and they were replaced by the firm of Tuhack & Texan, who then advanced plaintiff's arguments going forward through the November 2020 date when the sanctions order was agreed upon. And the motions sanction that had been filed against your clients, that was withdrawn in the agreed order as well? Correct, Your Honor, correct. So essentially, as we point out in our brief, the rule against fraud feasors from seeking to recover in court, that precludes plaintiff's claim. But in addition, as the court has ably recognized, the Twombly plausibility standard also applies to really defeat plaintiff's claims. And the district court, in her consideration of the plaintiff's motion to reconsider, delineated all the problems with the plaintiff's allegation in paragraph 11 of her complaint, that somehow she told my clients not to rely on this report. She said it simply wasn't plausible. So for those reasons, and for the reasons stated in our brief, we would ask the court to affirm the district court's judgment in all respects. Unless the court has any further questions. For conceptual clarity here, is this essentially or is this primarily an argument that the complaint, based on its four corners and then the judicially noticed documents, does not plausibly allege cause in fact, but forecausation, or that there isn't a basis for legal cause here, approximate cause, that recovery is foreclosed as a matter of law? Well, it's really both, Your Honor, but recovery is foreclosed as a matter of law, given the plaintiff's misconduct, and that all of these claims do arise. Right, I understand the fraud argument that you're making, but that wasn't raised in the district court, as I understand it, right? Until the reply brief? We raised it, actually, on the reconsideration issue. And as the district judge pointed out, that any attempt to replete around the plausibility problems fell or ran aground on the issue of the Quinn v. Mettis case. The court did cite in that aspect, but also the existing federal rules from the 19th century Supreme Court authorities that we cite in the case, likewise preclude the plaintiff coming in and asserting a viable legal malpractice claim in this context. So I'll just say, looking at the district court's opinion, I had understood the district court to be relying on approximate cause and the fact that there was an intervening event, which is a well-established way of breaking approximate cause. That was my reading of it. Thank you. Thank you, Your Honor. Mr. Slovic? Oh, I think your time had expired. You can have an extra minute in rebuttal, if you'd like to. I am very grateful for that one minute. I'll try to use it wisely. The district court, Your Honor, did rely on intervening cause and the concept of approximate causation. And that's where she went wrong, that she made a factual determination based on an incomplete record. She should have converted the 12B6 motion. Actually, she should have denied the 12B6 motion, saying, Mr. Nelligan, it looks like you've got a great defense there. We'll see if the facts bear it out. She should then alternatively have converted it to Rule 56 and allowed a more developed record to be submitted, which would have revealed contested issues of material fact and led to, we think, the denial of the motion to dismiss on that basis. What should have happened here, and what we ask you to cause to happen by reversing this judgment, is remand the case so that the issue may be joined and so that the traditional finder of fact can address the facts and all of the relevant evidence and make the conclusions. Judge Posner and Tierney said it's not cricket not to change it to Rule 56 if there's something that needs to be disambiguated from the record below. That happened here. Thank you very much. Thank you. Our thanks to both counsel. The case is taken under advisement.